# Galey v. Guffey.

*Contracts—Obligation of contracts—Unlawful impairment by courts.*

1. It is not within the power of courts of equity to restrain secured creditors of an individual whose estate has been placed in the hands of a receiver from adopting and applying such legal remedies as are allowed them by the terms of their contract and at such time as that contract by its terms permits.

2. While the legislature may not impair the obligation of a contract, it may modify the remedy; where, however, the parties contract concerning the remedy, the remedy becomes part of the obligation of the contract and any subsequent statute which affects

the remedy, impairs the obligation thereof and is unconstitutional.

3. The obligation of a contract which cannot be impaired by the legislature, cannot be impaired by the courts.

4. Where a mortgage on real estate provided that in the event of default, scire facias might issue on the mortgage and be prosecuted to judgment and execution for the collection of principal, interest, fees, cost and expenses, and after the execution of such mortgage the court appointed a receiver for the mortgagor's estate and enjoined secured creditors from proceeding on their securities, it was error for the court to refuse an application by certain mortgagees for leave to collect their debt from the mortgaged estate in the hands of the receiver in accordance with the terms of their contract.

Argued Feb. 22, 1915. Appeal, No. 61, Oct. T., 1915, by Annie B. Sterrett and Emma J. Sterrett, Trustees under the will of James P. Sterrett, deceased, and James R. Sterrett and David D. Kennedy, Executors of the Will of John M. Kennedy, deceased, from decree of C. P. Allegheny Co., Fourth T., 1910, No. 50, refusing petition for leave to foreclose a mortgage, in case of J. H. Galey v. J. M. Guffey. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Bill in equity for the appointment of a receiver.

Petition for leave to foreclose a mortgage upon property in the hands of the receiver. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

The court refused the petition. Annie B. Sterrett and Emma J. Sterrett, Trustees under the will of James P. Sterrett, deceased, and James R. Sterrett and David D. Kennedy, Executors of the Will of John M. Kennedy, deceased, petitioners, appealed.

*Error assigned* was in refusing the petition.

*John G. Johnson,* with him *Sterrett and Acheson,* for appellants.—The lower court had no power to prevent

the foreclosure of the mortgage: Pairpoint Manufacturing Co. v. Philadelphia Optical & Watch Co., 161 Pa. 17, 22; Barrie v. Nat. Portland Cement Company, 14 Pa. D. R. 816; Real Estate Title Insurance and Trust Company v. Mahoning Rolling Mill Company, 6 Pa. D. R. 409, 411; Gilder v. Merwin, 6 Whart. 522; Lane v. Washington Hotel Company, 190 Pa. 230, 234; Winch's App., 61 Pa. 424, 426.

The rights of secured creditors could not properly be interfered with by the appointment of a receiver: Risk v. Kansas Trust & Banking Company, 58 Fed. Repr. 45, 46; Scott v. Farmer's Loan & Trust Co., 69 Fed. Repr. 17, 21; Baltimore Building and Loan Association v. Alderson, 90 Fed. Repr. 142, 147; Lockport Felt Co. v. United Box Board & Paper Co., 74 N. J. Equity, 686, 690; In re Mayer, 157 Fed. Repr. 836.

*John M. Freeman* and *D. T. Watson,* with them *Harry F. Stambaugh,* for appellee.

OPINION BY MR. JUSTICE STEWART, March 15, 1915:

The petition of J. H. Galey, presented 14th July, 1910, to the Court of Common Pleas of Allegheny County, represented that the petitioner was a creditor in a large amount of J. M. Guffey, of the City of Pittsburgh; that the said Guffey was possessed of property of a value greatly in excess of his liabilities, but that, because of his inability to pay the interest on maturing obligations, certain of his creditors holding collateral pledges exceeding in value,—twice over,—the amount of the debt for which they were pledged, were threatening to sell the same at private sale, as they had a right to do under the terms of the pledge; that other creditors were threatening suits and attachment proceedings for the recovery of their claims, and that such proceedings, unless restrained, would result in great loss to the petitioner and other creditors, inasmuch as the property of the debtor would be disposed of by this method at a price far below

its value. For these reasons the petitioner prayed for the appointment of a receiver to take charge of all the assets and property of the said J. M. Guffey, to manage the same under orders of the court, free from the interference of creditors, that the creditors be restrained from entering suits and from selling or disposing of the property of the said J. M. Guffey except subject to the order of the court, and that the court, at such time as to it seems proper, should order and direct the sale of the property of the debtor, and apply the proceeds in payment of the indebtedness for which it is pledged, and the surplus to the payment of the unsecured creditors. On the same day an answer to the petition was filed by James M. Guffey, admitting the facts alleged in the petition and acquiescing in the prayer. On the day following, without notice to the other creditors, the court appointed John S. Willard receiver of the estate of said Guffey, in accordance with the prayer of the petition, and by its decree enjoined and restrained all creditors from selling, transferring or in any manner disposing of any of the property belonging to said estate, and from interfering in any way therewith, or from doing act or thing to prevent or obstruct said receiver in the performance of his duty.

Among the liabilities of said Guffey at that time was a certain mortgage indebtedness, the subject which gives rise to the present controversy. In June, 1908, James P. Sterrett and John M. Kennedy, both of whom have since died, sold and conveyed to J. M. Guffey, a certain lot of ground in the City of Pittsburgh, accepting in part payment of the purchase-money a bond secured by mortgage on the premises sold in the sum of $10,000.00, payable in one year thereafter with interest thereon payable semi-annually. It was stipulated in this bond and mortgage that in case default in payment of principal or interest for a period of sixty days after due and payable, the mortgagees should have the right to sue out forthwith a writ of scire facias on the mortgage and pros-

ecute the same to judgment, execution and sale, for the collection of the whole amount of principal and inter-est, together with fees, costs and expenses, and that the mortgagor waived all stay of exemption from execution or extension of time of payment given by any statute then in force or that might thereafter be enacted. The entire principal of this mortgage has been overdue and unpaid since 23d June, 1899. Interest thereon had been paid by Guffey until the receiver was appointed; thereafter payment of interest was continued by the receiver until 23d December, 1913, when the last payment was made. Default having been thus made beyond the period allowed by the term of the obligation, these appellants, respectively trustees under the will of James P. Sterrett, deceased, and executors of the will of John M. Kennedy, deceased, desiring to proceed with the collection of the debt and interest thereby secured, but having before them the restraining order of the court above referred to, presented their petition to the court, in which, while questioning the power of the court in such case to restrain the creditors from enforcing the payment of the debt due him, they asked leave to proceed to that end by the remedies provided for in the mortgage. After hearing, this leave was refused. The appeal is from the final order of refusal, and we have before us the single question whether the order of the court enjoining the creditors of J. M. Guffey from proceeding by law to enforce collection of the debts due them, so long as the estate is in the hands and under the control of the receiver appointed by the court, operates in law to stay the hands of these appellants. In other words, the question raised is: is it within the power of the court to restrain these particular creditors—and we are here concerned with no other—because of the appointment of the receiver of the estate, from adopting and applying such legal remedies as are allowed them by the terms of their contract, and at such time as that contract by its terms permits. To state the question—hav-

ing in mind the constitutional inhibitions national and State against legislative impairment of contracts, and the repeated decisions of this court with regard thereto—is, we think, to answer it. It is true that what is prohibited is legislative action the effect of which would be the impairment of a contract; but what the legislature may not do in this regard certainly the courts may not do. The power that is here denied the legislature was not reserved to the courts. Great as are the equity powers of the court, it is yet to be suggested that included in these powers is the power to nullify or impair a legal contract solemnly and intelligently entered into between competent parties. Here we have a contract between the parties evidenced by bond and mortgage, wherein it is provided that in case the obligor makes default in payment of the principal or any installment of interest on the principal for a given period after the same shall have been due, the creditor shall have the right forthwith to proceed at law to enforce collection of the whole principal debt, the debtor waiving the benefit of all laws that might entitle him to a longer stay, That the action of the court in restraining the creditor from proceeding to collect the debt due in such case contravenes the expressed provisions of the contract is apparent; that it materially impairs the creditors' rights and interests is no less so. We are not lacking express authority for so holding. "We understand the rule to be," says Mr. Justice WOODWARD in Breitenbach v. Bush, 44 Pa. 313, "that whilst the legislature may not impair the obligation, they may modify the remedy. But, it sometimes happens that the parties contract concerning the remedy—that they stipulate in the body of the contract, that in case of failure of payment by a certain day, there shall be no stay of execution, or that the mortgagees may enter and sell the mortgaged estate—or that all exemption rights shall be waived. In such cases the rule is that the remedy becomes part of the obligation of the contract, and any subsequent statute which affects

the remedy impairs the obligation, and is unconstitutional. Brown v. Kenzie, 1 How. 322, and Billmeyer v. Evans & Rodenbaugh, 4 Wright 327, are illustrations of this rule....... A mortgage is indeed a contract, and so within the constitutional provisions which forbid the State to impair contracts, but its constitutional inviolability is no higher than that of a bond or promissory note. The legislature cannot impair the obligation of any contract, but a suspension of remedies for a definite and reasonable time does not transcend the legislative faculty because it impairs not the obligation of the contract. If the parties adjust or modify, the legal remedies for themselves by making them an express and substantive part of their contract, they cannot, as to that particular contract, be changed by the legislature; but where the parties, whether to a mortgage or other contract, have not treated about the remedies, the constitutional power of the legislature is subject only to the limitation above suggested." In Billmeyer v. Evans & Rodenbaugh, 40 Pa. 324, in an opinion by the same learned judge, this is said, "So when these defendants stipulated for twelve months' credit, and agreed that there should be no stay of execution beyond that limit, can the legislature say that there shall be a stay beyond that limit without impairing the obligation of the contract? How would it be possible more directly to impair a contract? What is it but setting aside the contract made by the parties and substituting a different one for it? To say that a contract which waives a stay of execution is not impaired by a law which gives a stay, is to talk language which is unintelligible. If the legislature may do this, the constitutional provisions are a vain parade of words, a mere theoretical rule without any practical force or value." In a later case, Weist v. Wuller, 210 Pa. 143, this is said by FELL, J., "The legislature may modify or suspend for a definite and reasonable time a remedy it has given, but it may not by acting on the remedy impair the obligation of a con-

tract. Remedies which affect the interests and rights of the parties and are made the subject of contracts for the purpose of enforcing it, become an essential part of the obligation and a right which cannot be impaired by subsequent legislation."

Further citation of authorities in support of the principle which we think here governs is unnecessary. In conclusion we have only to repeat that the restrictions upon the legislative power above referred to, apply with equal force to the judicial. It follows that the court below committed error in refusing the leave that was prayed for, and the order appealed from is accordingly reversed, and leave is now granted appellants to proceed to enforce the collection of the mortgage in question in the manner therein provided.